IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:16-CV-00024-GCM

| | |
|---|---|
| THOMAS PAGANI, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| MODUS EDISCOVERY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**THIS MATTER** is before the Court following Defendant's Motion for Summary Judgment (Doc. No. 11), Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 19), and Defendant's Reply Brief in Support of Motion for Summary Judgment (Doc. No. 22).

I. **Background**

Action Legal Document Services of Charlotte, LLC ("ALD") hired Plaintiff Thomas Pagani on January 3, 2006 and entered into the Employment Agreement. In December 2010, having purchased the assets of ALD, Defendant Modus eDiscovery, Inc. ("Modus") (formerly known as "Ivize Services, Inc." ("Ivize")) assumed responsibility for Plaintiff's Employment Agreement.

Modus terminated Pagani's employment on December 12, 2012. At that time, Pagani was a Regional Discovery Executive at Modus.

Section 1 of the Employment Agreement provides that "[t]he Company shall employ [Plaintiff], and [Plaintiff] will provide services to the Company, for a term commencing as of the

1

closing of the Acquisition . . . and continuing until terminated pursuant to Section 9." Schmidt Decl. ¶ 3, Exh. A at ¶1.

Under Paragraph 9 of his Employment Agreement, Modus could terminate Plaintiff's employment with or without "Cause." Schmidt Decl., 3, Ex. A at ¶ 9. "Cause" is defined in the Employment Agreement between Plaintiff and Defendant as "Tier 1 Cause, Tier 2 Cause, Tier 3 Cause and/or Tier 4 Cause." (Schmidt Decl. ¶ 3, Exh. A at ¶ 9(d)). If Modus terminated Pagani, while possessing Tier 1 or Tier 2 Cause, Pagani would not be entitled to any severance. Schmidt Decl. 1, Exh. A at ¶ 9 (c). "Tier 2 Cause" is defined as:

> (x)(a) the Net Sales from the Company's operations, during the most recent six calendar months ended at least 20 days prior to the date as of which Tier 2 Cause is to be determined, were less than $397,475.50 . . . or (b) the Net Sales from the Company's operations, during the most recent twelve calendar months ended at least 20 days prior to the date as of which Tier 2 Cause is to be determined, were less than $753,315 . . . and (y) the Company had losses (determined in accordance with generally accepted accounting principles) for such six calendar month period or twelve calendar month period, as applicable.

*Id.*. Notably, Tier 2 Cause requires that the Net Sales from the Charlotte operations be below certain amounts in either a six-month ($397,475.50) or 12-month ($753,315) period, and that the business in Charlotte had losses for the same period. *Id.*. The Employment Agreement defines the "Company" as Action Legal Document Services of Charlotte, LLC. *Id.* at 1.

The point of contention in this case is whether Pagani is eligible for severance. This boils down to whether Pagani was fired for Tier 2 Cause as defined in the Employment Agreement. If he was, then Pagani would not be entitled to severance. The Defense claims that Pagani was terminated for Tier 2 Cause. Plaintiff claims that he is entitled to severance payments and other damages resulting from Defendants' alleged breach of contract because his employment was terminated without "Cause."

When this complaint was filed there was multiple defendants and multiple claims. However, at this point, the only claim left in this case is a claim for breach of contract against Defendant Modus where Plaintiff claims contractual entitlement under the Employment Agreement to 18 months of severance payments from Modus. Defendant Modus has moved for summary judgment on this claim. Plaintiff Pagani opposes their motion. This matter is now ripe for disposition.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence" in support of the non-movant's position is not sufficient to establish a genuine dispute. *Id.* at 252. A material fact affects the outcome of the suit under the applicable substantive law. *See id.* at 248. When determining whether a dispute is genuine or a fact is material, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Unsupported speculation, however, is insufficient to defeat a motion for summary judgment. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

## III. Analysis

Modus' Profit & Loss spreadsheet covering January 2006 through December 2012 shows losses in Charlotte every month dating back to at least May 2011. Schmidt Decl. ¶¶ 4 & 5, Ex. B.

3

This meets the Tier 2 Cause requirement of losses for at least the 12 months preceding Plaintiff's termination.

Given the Employment Agreement's requirement that the period must end at least 20 days before the date Cause is determined, the relevant six-month period would be from May 2012 through October 2012. The Net Sales for this period total only $368,211.15; the Employment Agreement requires only that Net Sales be below $397,475.50 for Tier 2 Cause in a six-month period. Schmidt Decl. ¶¶ 3, 4 & 6, Exs. A at ¶ 9(d)(i) & B. In addition, the relevant 12-month period would be from November 2011 through October 2012. The Net Sales for this period total only $629,871.99, well below the Employment Agreement's requirement of Net Sales less than $753,315 for Tier 2 Cause in a 12-month period. Schmidt Decl. ¶¶ 3, 4 & 7, Exs. A at ¶ 9(d)(i) & B. Thus, all the criteria for Tier 2 Cause existed, according to the Defendant's Profit & Loss spreadsheet.

The Defendant's Profit & Loss spreadsheet was submitted as Exhibit B in the declaration of Rick Schmidt, the Chief Financial Officer of Modus, which was made in support of the Defendants' Motion for Summary Judgment. Schmidt declares that the spreadsheet is an accurate reflection for Modus' Charlotte operations from January 2006 through December 2012. Schmidt Decl. ¶ 4.

In response, Plaintiff claims that there are numerous inaccuracies in the proffered Profit & Loss spreadsheet. These claims are detailed in the Deposition and Declaration of Thomas Pagani and were made after Pagani examined the information the Defendant used to create the Profit & Loss spreadsheet produced by the Defendant during discovery. The Plaintiff argues that there are the following errors with the Profit & Loss spreadsheet: Modus' records do not contain records for certain days, including eight between December 2011 and July 2012; Modus erred in

not attributing certain revenues to the Charlotte office; and Modus should have credited the Charlotte office for all revenues associated with three large contracts secured by the Plaintiff. Doc. No. 19 at 7-8. Additionally, Plaintiff argues that the relevant Net Sales target should include sales from other Modus offices. Doc. No. 19 at 8.

Defendant in its reply makes two related claims based on the idea that Plaintiff provided contradictory testimony of the accuracy of the Profit & Loss spreadsheet in his deposition: (1) this means there is no genuine dispute of material fact regarding net sales figures and (2) Plaintiff's declaration should be disregarded. *See* Doc. No. 22. The Court believes that the testimony described is not actually testimony that the net sales figures and the *inputs that underlie that data* in the Profit & Loss spreadsheet are accurate. For example, Defendant claims that Plaintiff Pagani testified that the net sales figures were accurate in the Profit & Loss spreadsheet at his deposition. Doc. No. 22, 5. The Defendant asked Pagani is there were errors in specific sales figures and Pagani said "No." However, it is clear from his full answer that all Pagani was testifying to was that the numbers within the spreadsheet if added together would equal the net sale number pointed to by the questioner. Pagani Depo., 54-57 ("if we got out a calculator and added up these numbers, they would equal that."). It is misleading and inaccurate to claim that this answer contradicts Pagani's later declaration that there are errors in how the records in the Profit & Loss spreadsheet were calculated. There is clearly a difference between testifying that numbers on a page add up to equal a sum and that the numbers themselves are inaccurate. The Court cannot say that, as a matter of law, it would be unreasonable for a jury to conclude that the Plaintiff looked at the spreadsheet and found that all the numbers found on the spreadsheet were added correctly but also when the Plaintiff looked at the data underlying these numbers, found numerous inaccuracies.

In order to grant Summary Judgment, the court would need to weigh the Schmdit and Pagani declarations and determine that the Plaintiff's statement lacks credibility. "[S]ummary judgment under Rule 56 ... may not be invoked where, as here, the [depositions of the principal witnesses] present conflicting versions of the facts which require credibility determinations." *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir.1979) (per curiam). *See also Shaw v. Stroud*, 13 F.3d 791, 804 (4th Cir.1994) ("[T]he credibility of a deposition is a question for the jury rather than an issue to be settled at the summary judgment stage."). Disposition of matters turning on credibility may only be determined by the trier of fact. In the instant case, determinations as to whether Modus' Net Sales figures hit the Tier 2 benchmark, rely heavily on the relative credibility of Modus and Pagani. As such, a grant of summary judgment would be erroneous.

In total, the evidence shows that issues of material fact exist. **IT IS THEREFORE ORDERED** that Modus eDiscovery's Motion for Summary Judgement be **DENIED**.

Signed: March 30, 2017

Graham C. Mullen
United States District Judge